May it please the court, Weylie Shaw for the appellants. After this court's decision and Marquez is absolutely clear that the district court erred in creating a Bivens remedy in this case, the question is when that error can be corrected. Now or after that decision has done very damage to the separation of powers and the effectiveness of the executive branch that the Supreme Court sought to prevent in Egbert and that the Supreme Court has said is sufficient to warrant interlocutory appeal in Will v. Halleck. I'd like to just begin with the Hanson v. Schubert case that plaintiffs cited in a 28-J letter filed yesterday which unfortunately came in while I was on a flight from Washington, D.C. So I apologize to the court for not being able to file a written response to that letter. But I just want to point out that Hanson acknowledges at footnote 4 that interlocutory appeal from denial of a motion for reconsideration may be appropriate where there is new intervening law and that is exactly what happened here. I didn't join that footnote, why was I wrong? So I think if we were to take a sort of fresh, well let me back up. First I think that the footnote is part of the precedent of the court. It doesn't matter if I didn't join it. So I think it establishes the limits of the principle that the court established in Hanson and it's grounded I think in other sources. For example, Wright and Miller acknowledges a similar principle and even this court has an earlier decision which unfortunately has not been cited in any of the briefs in Marks v. Clark, that's 102F3D1012. That also acknowledges a sort of similar exception, I guess I would call it, in which it's appropriate to consider denial of a motion for reconsideration on qualified immunity when there's been intervening law. Counsel, I have a severe problem with whether or not we have jurisdiction over this appeal and I know you'd like to get to the merits, but isn't there a difference between filing a motion for reconsideration within the 30 days provided under the rule and filing a motion for reconsideration after that period has expired and here isn't the time lapse two years? And the best you can say is, well, Egbert changed the landscape here, but Egbert doesn't say anything about Farmer. And so I'm not sure that it is a change in the law with regard to this case. I think it is very much a change in the law and the evidence we have for that is actually a decision of this very court. So prior to Egbert, there was a decision in a case called Hoffman v. Preston where a panel of this court held that there is no Bivens remedy for a failure to protect claim. And then Egbert issued, and after Egbert came out, the Hoffman panel actually withdrew its original decision, cited Egbert, and held that there is not a Bivens remedy for a prisoner of failure to protect claim. So clearly, Egbert was sufficient to convince that panel that the law had changed and that it needed to reverse its original decision. And on the merits, they came out against the position that you're taking, right? That there is not liability, or excuse me, that there is liability. I'm sorry, that the original Hoffman decision issued prior to Egbert held that there is a Bivens remedy in this context. And then after Egbert came out, the panel flipped and reached a different conclusion. It came to the opposite holding, issued an unpublished opinion holding that there is no Bivens remedy for failure to protect claims. And in particular, I would point to some aspects of Egbert that do represent a change in the law. In particular, I would note the court's discussion of Hartman, which was a Supreme Court decision discussing the standard for a First Amendment retaliation claim. And Egbert said that Hartman, because it simply assumed the existence of a Bivens remedy, did not actually establish that there was a recognized Bivens remedy in that context. And that exact same reasoning applies to Farmer. So I think Farmer's, I'm sorry, that Egbert's analysis controls and tells us that Farmer cannot be treated as a recognized Bivens context. And that is exactly the reasoning that the district court adopted. And it's not even such an implication, is that what you're, you know? I mean, there's not, I'm not discussing, I don't think there's a real repeal at all. I think what Egbert tells us is that where a prior Supreme Court decision has merely assumed the existence of a Bivens remedy in reaching a merits question, that decision cannot be read to actually establish a new Bivens context for the purposes of the Bivens analysis. And that holding squarely applies to Farmer. I'm not saying Farmer isn't good law. Farmer still supplies the deliberate and different standard for many prisoner rights claims. All I'm saying is that under, after Egbert, Farmer cannot be interpreted to establish a new Bivens context, which is not holding that as anywhere in the opinion. So there's no question of repeal. So based on that, I would say that the Hansen exception in footnote four applies, or at least it would if this were a qualified immunity appeal. So then the question is whether an order of recognizing a Bivens remedy should get the same collateral order treatment as an order denying qualified immunity. And it should, because Bivens doctrine expressly aims to protect the same significant public interests that prompted the Supreme Court to authorize immediate appeal of qualified immunity orders in Mitchell, and that the Supreme Court said were sufficient in Will versus Halleck. So Will said that collateral order appeal is available when the purpose of the doctrine on that issue is to avoid trial in order to protect a particular value of a high order. And two of those values are the separation of powers and preserving the efficiency of government and the initiative of its officials. And so, okay, so why can't that be vindicated on appeal later? because that's the major qualified collateral doctrine in the question, right? Whether or not it can be vindicated later. Yeah, it cannot be vindicated later because Egbert and strictly limiting the recognition of new Bivens remedies is to prevent harms that arise not only after final judgment, but that occur directly, that occur before judgment through discovery and trial. So the harm is having to undergo discovery and trial. Yes, having to undergo discovery and trial and the harm to the separation. For application of the doctrine of qualified immunity, correct?  So in response to Judge Bumate's question, why can't this be thoroughly vetted and decided in your favor on appeal from an adverse judgment? Because allowing the case to continue until final judgment would threaten the precise values that the Supreme Court sought to protect. You're sort of blending the justification for qualified immunity with your argument here, are you not, and saying that it excuses the first prong? No, I don't think I'm saying that at all. I mean, we could set qualified immunity aside completely and conduct a de novo application of the collateral order doctrine to this Bivens remedy context, and I would reach the same conclusion. Because Will says that two values that are sufficient to support immediate appeal are. Yeah, so he's saying even though we're not directly in qualified immunity, the same interests are involved because recognizing a Bivens claim when it should not be recognized subjects the government to discovery and trial when it shouldn't be. Right, and that's why it can't be vindicated. And it's not merely the fact that there is discovery and trial, because that was also the case, for example, in Will versus Hamlet with respect to the judgment bar, the difference between Will versus Hamlet on the one hand, and Egbert and qualified immunity on the other, is that the very purpose of the doctrine is to prevent these harms. And so by allowing the case to continue until final judgment, you're sort of, you're eviscerating the purpose. What harms are you talking about? You said the very purpose of the doctrine is to prevent these harms. Yes. And so I'm talking, so I think the two harms are, one specifically identified in Will as being sufficient, honoring the separation of powers, and protecting the efficiency of government and the initiative of government officials, and to support that- I'll reportedly draw the line, if we accept your argument, it seems to me, and I think other judges have commented upon this in the cases that we reviewed, that every time the government loses on a motion for summary judgment in a situation like this, or judgment on the pleadings, then we have to accept an interlocutory appeal. No, I think that's absolutely not the case. I think that's exactly- How do I narrowly confine the rule that you want us to apply here to avoid the floodgate argument? Yeah, and I think Will versus Hamlet explains how to write that opinion. So Will distinguishes between a doctrine or a rule that simply avoids litigation for its own sake, and so that was FTCA's judgment bar, and I guess I would throw in there, a conventional motion for summary judgment, or a dismissal for a failure to state a claim, with doctrines that seek to avoid trial to protect a particular value of a higher order, which, again, are the considerations I cited to Judge Bumate. And I can point you to where the Supreme Court discusses this. So, for example, in Egbert, the court says that recognizing any new Bivens action entails substantial social costs, including the risk that harassing litigation will unduly inhibit officials in the discharge of duties. Even a frivolous claim threatens to set off broad-ranging discovery, in which there is often no clear end to the relevant evidence. And then there's more in Abbasi, and then with regard to the separation of powers, the Supreme Court says that because recognizing a Bivens cause of action  the court's there so that they have a concomitant responsibility to address the existence of a Bivens remedy, notwithstanding the forfeiture in that case. I'm sorry, I didn't identify it as one of the three categories of Bivens claims that the court had recognized. I think that's not, I would agree with that. And I think Egbert doesn't say we're overruling farmer. That's the concern I have. Again, I don't think there's any question of overruling farmer. Farmer remains good law. The question is whether you can read into farmer this additional holding, I guess, that plaintiffs would like or that the district court seem to believe that farmer establishes a new Bivens context. And after Egbert, it's simply not possible to read farmer in that way. Farmer doesn't discuss special factors. It doesn't compare the facts to any existing prior Bivens context. So farmer simply didn't say anything about whether there is a Bivens remedy in the failure to protect context. And Egbert makes that absolutely clear. So again, there's no, we're not asking that farmer be treated as overruled or repealed by implication or any of that. Simply, what is the proper reading of farmer? And he's saying it didn't hold that Bivens occurred. It was just, you know, lurking in the decision, not that it was actually held. Exactly. The court simply assumed or even didn't say anything about the existence of Bivens. Is it like, shouldn't we think of this as a sovereign immunity type question? Because, you know, normally, federal government entitles some sovereign immunity, correct? And then when Congress develops a cause of action, that sovereign immunity is pierced. So here we made up this cause of action, which, so why isn't that an affront to sovereign immunity in that respect? So it makes it almost directly on point with qualified immunity. Yeah, I do agree that it is an affront. The erroneous recognition of the Bivens remedy and contravention of cases like Egbert is an separation of powers, both with respect to the executive branch, which I think is what you're talking about. Has any of the court had viewed it that way as an affront to sovereign immunity? I haven't seen it. It just, it seems so parallel. I haven't seen a discussion that expressly discusses it in that way, but I think the reasoning is analogous. And I think I agree that it is an affront for a district court to erroneously recognize a Bivens cause of action. And it is incumbent on the judicial branch to correct that error before further consequences of the precise kind that the Supreme Court has warned about in Egbert continue to accumulate. And so I think it's incumbent on the judicial branch to judge it. So the harps you're saying is not just the fact of trial, going to trial and discovery. It's the impact it might have on the operation of the executive branch. Otherwise, because what the fear is, I might be erroneously dragged into court on a Bivens claim and not do my job as well as I should be because I don't want to have to even go through that process. Right. If a prison official, for example, sees that their co-workers are being hailed into court to go through discovery and depositions and so forth regarding how they assigned prisoners to particular cells, that is going to impact the initiative of these officials in executing their duties. All right, we're over time. Any further questions? Thank you. All right, Councilor Bradley. Good morning, Your Honors. And may it please the Court, de danger and lay them pronouns for the Plaintiff Appellee Mitchell Garraway. This Court should dismiss for lack of jurisdiction for two independent reasons. First, motions of reconsideration are generally not subject to immediate appeal as this Court held in Hanson v. Schubert. In particular, Judge Montague, Plaintiff agrees with your concurrence in Hanson that would adopt a right-line rule, but even under the Hanson majority's framework, this case does not fall into the discrete category of cases where interlocutory appeal of an order on a motion for reconsideration is warranted. And like in Hanson, defendants forfeited any argument otherwise by arguing it here for the first time. I mean, looking at that footnote in Hanson, I'm trying to make sense of what it means and what it means for this case. The footnote seems to recognize that perhaps there's a possibility that there is an exception. It doesn't definitively say that. What do we do with that language? I'm like, is that a holding? I don't know. I'm not quite sure what that footnote is. Your Honor, we would argue it's not a holding. I think that it's arguably dicta because it's not the case was not. It's dicta, I guess, because, of course, in the Ninth Circuit, dicta is binding. Thank you, Your Honor. The intervening precedent was not at play. And it was not found to be relevant. And the same standard was being discussed there. That's what the court found, from my understanding. I think that the district court here saw the 6db motion. So to the timeliness question, the reason it is an untimely notice of appeal, but for this exception for the case now. What, a Rule 6db or Rule 59e motion to amend the judgment? Because the judgment was entered two years before the motion for reconsideration. Three years after the decision as well. So the argument that we put forth, though, is that the district court ruled on Egbert. And if you noticed, the appellant started with Marquez. And Marquez would be vitiated if the Egbert argument that appellants have raised, that it necessarily found Farmer to be not good law, this court would not have needed to reach what it reached in Marquez, actually making that determination in the context there. And so the defendants could have raised a new motion for reconsideration once Marquez was filed, and they chose not to. They chose instead to forge ahead with this appeal. Marquez was after the motion for reconsideration. Yes, so doesn't that prove the point, though, that Farmer is not a Bivens case? So, Your Honor, we appreciate the chance to brief that. We have not, because we stand strongly in the jurisdictional arguments. But, I mean, that implicates the whole change of law issue. Because, you know, Marquez didn't announce a new law. It was interpreting Egbert, which happened pre this motion for reconsideration. So, therefore, the change in law would grant them jurisdiction under the Third Amendment IV, which I disagreed with, but I lost. Right. So Egbert was a step two case, and it had nothing to do with the new context inquiry. Marquez reached the Farmer. Wait, wait. Egbert was discussing the special factors inquiry, and it included discussion of the reasoning that went to this longstanding Abbasi factors related to the new context test. But everything that Marquez ruled on, it could have ruled on even without Egbert with the Abbasi factors applied. And if you look at the Egbert opinion, sorry, the Marquez opinion, it maintains the two step inquiry that Abbasi laid out and ruled first that the court. I mean, I thought we said supposedly the court gets used to reaffirming, but there are three of these cases, Bivens case, and Farmer is not one of them. The Marquez court. My point, Your Honor, is that the Marquez court reaffirmed, more importantly, the structural two step inquiry of the Bivens context. And a number of discussion about Egbert making the holding on Farmer is to say that Egbert collapsed the two steps, which it did not. Because of the two step inquiry, the science circuit still had to reach what it did, which was saying that Marquez was not good law. Because at that point, there were other circuits that Farmer's not good law. Yes, I'm sorry, Your Honor, that Farmer's not good law. Because there were other circuits that had decided otherwise that Farmer remained good law, even post-Egbert. That was shorter in the Third Circuit. But, Your Honors, I don't think that we should focus on this. And I encourage the court to, you know, think about the motion for reconsideration argument without going into the merits. And so, if the court wanted, it could assume that Hassell-Benoffer applies and reach what we've briefed. And so, what's your response to the government's argument that what we're really protecting here is a violation of separation of powers and deterring or intimidating federal officials from their decision? So, first, Your Honor, defendants converge to totally different separation of powers concerns. The biggest question is who should decide whether there is a remedy, Congress or the courts. The separation of powers concern, therefore, is about judicial intervention with the legislative branch. All of the discussion in all of the cases cited by the appellant regarding subjecting government officials to the burdens of litigation go to preventing unwarranted interference with federal officials in the executive branch. This is a different separation of powers question and one that sounds in a right not to stand trial. And you could see this meshing of the separation of powers harm with the COVID-19 factor. Both the usurpation of legislative authority by the courts and interference in the operations of the executive branch. Why can't the two exist in tandem? Arguably, they could, Your Honor, but it's not what the collateral order doctrine would then actually care about. Because the separation of powers concerns that are actually in defense go to whether Congress should make a remedy. In the collateral order doctrine, it's really asking, should the defendants go through the burdens of litigation? And you see defendants try to compare that to the qualified immunity reasoning there. That's everything that had to do with the burden on trial goes to qualified immunity. And they were pulling from cases regarding qualified immunity. But the collateral order doctrine, though, it's not about qualified immunity solely. It's about protecting the interests of substantial worker. And you kind of admit that this is a unique context where not only is it a front, you know, it's a violation of separation of powers against the executive. It's also a violation of separation of powers against the Congress. And I would argue it's a violation of separation of powers against Article III as well. But so it seems like it is a special, something so different because it's such a big separation of powers question that why shouldn't we review it under a collateral doctrine? Because that is such a special, big issue, unique issue. So as defendants received in the reply brief, the inquiry at hand is whether the appellate court can justify the appeal of the entire class of relevant orders. So first, not every element that you just listed, Judge Mutate, would go to every Bivens case. Because, you know, Abbasi and other cases included border control, national security context. That's not present here, which is a medical, not a medical, sorry, a failure to protect claim in a prison. And so the entire Bivens class, you're really just thinking about the congressional question. It's not always going to bring in the executive branch. This larger national security conservative colleague on the other side just said that, you know, there might be concern for prison officials making, being afraid to make a decision because they'll be hailed into court. So why isn't that? Yes. And so that goes to the second argument regarding qualified immunity. The reason I'm trying to compare to qualified immunity, and it's that the, when the cases discussed the substantial social costs that, Egbert was one example that appellants used after discussing the substantial social costs, the court concluded, we are therefore convinced that in light of these costs, Congress is in a better position to decide whether or not the public interest would be served by imposing a damages action. So it's still going back to this more important question on a severance of power. So I don't think there's an issue regarding the impact on executive officials. I acknowledge it, Your Honor. And that would go to the importance, not to the, so in the Cohen framework, we see a blending of the step two and step three by the appellants. In the steps, we are not arguing on step two. We are arguing solely on step three as the Sixth Circuit and Third Circuit and the Tenth Circuit just yesterday found. And so the Tenth Circuit actually grouped the cases in the non-immunity context as immunity and those that would be moot after final judgment. Those are the two contexts of collateral order doctrine. And the qualified immunity examples are just not, do not bear on this question because the right not to stand trial for collateral order has to do with the fact that the law is unclear and the burden is actually to put forth litigation and to require the defendants to go through litigation when there's not even a clear constitutional violation. That does not apply when it comes to Vivian's liability question. But you seem to acknowledge that prison officials could be impacted by the threat of a Vivian's claim here. And so why shouldn't we nip it in the bud so that we're not affecting executive branch officials? Your Honor, it's because FDIC versus Meyer, the Supreme Court case that actually just reversed a grant of Vivian's after final judgment shows that that question, to Judge Fletcher, was actually resolved after trial. There's no exchange of the remedy until after the appeal and after final judgment. There's no actual harm unless you agree with the pellent's contention that the harm is the actual standing for trial. And that's just not at all present in the case law. Right, with respect to that one prison official being held in court. But what about all the other officials that are hearing that their colleague is going to court having to take discovery? And so therefore, I don't want to mess with that. And so I'm not going to get even close to whatever that issue was. I think your Honor, qualified immunity comes into play. That's exactly why qualified immunity gets an appeal and is not present. So for an example, take the same issue but with a state official. The state officials would not have this Vivian's liability question at all. And qualified immunity would knock it out. And so here, it's really just a liability question that is normally handled after final judging. I just think the difference, though, is in qualified immunity, it's that specific officer that's being held in the court that is preventing that specific officer from going through discovery, going through that trial. But Vivian's argument that government seems to be making is that it's not just that individual officer. It's all the other officers that are hearing about their colleague being dragged into court. And so therefore, it might impact their executive function. No, Your Honor. I think that qualified immunity, initial versus force, I've discussed that as well. And that is a part of why qualified immunity gets collateral order review. And again, that's why Vivian should. I guess you're suggesting it's like an either or. Either you get qualified immunity, and therefore, you can't go under Bivens. I just don't know why. Why can't we have both? We could have had both, Your Honor. The defendants did not raise. Oh, you mean why we can't have both for collateral order doctrine? Yeah, exactly. Why can't we have qualified immunity protection under collateral? And why not Bivens protection under collateral? It's not either or. It's not. But because Bivens is a liability context rule versus Halleck explicitly disavowed a collateral order doctrine. That is not dicta. That was, it was, well, perhaps it's dicta. But it's dicta to the extent that it's saying, away from the FECA judgment, look at these other examples where we shouldn't. Because this is purely about damages. And the Guilford versus Halleck case, we think, is very binding on this Court. I see that I'm over time, Your Honor. So if you have any other questions, thank you. Thank you. We'll give you one minute for rebuttal. And I'm just going to launch right in. Can you address the last point that your friend across the aisle made with regard to will? I understand the government's argument that there's language in will that makes it pretty difficult because it clearly says that it's sort of litigation troublesome to government employees. If that were enough, then you would have interlocutory review as a matter of right every time the government loses a Bivens action or a tort claims issue. And the Supreme Court said, no, that's not the case because that would eviscerate the final order doctrine. How I would read that dictum is that it simply restates the general proposition, which we agree with, that, in general, denial of a motion to dismiss is not an appealable collateral order. But obviously, some denials of motion to dismiss are, including, for example, qualified immunity, which faculty for you with will is that they didn't just say, you know, as a matter of generality, denials of a motion to dismiss specifically referenced Bivens. I'm sorry, I don't think. Right. I'm sorry. They do refer to Bivens cases. They refer to denials of motion to dismiss in Bivens cases. And I agree with that. But I think the court simply restating the principle that even in this category of cases, as a general matter, motions to dismiss are not collaterally appealable. But that cannot stand for a categorical rule that no motion to dismiss is appealable in a Bivens case under denial of a motion to dismiss. And the reason we know that is because qualified immunity is usually raised on a motion to dismiss, so an order denying a qualified immunity. In that context, you have the Bivens sort of writing the coattails of an immunity situation, which gets its own treatment. What I'm trying to say is that that rules dicta, even if we were to treat it as precedent, which it's not, does not stand for the proposition that there's a categorical bar on collateral appeal of an order denying a motion to dismiss in a Bivens case. Well, I asked a general comments question earlier about how do you draw the line. Because if the Supreme Court is expressly acknowledging that you don't just get it in a laboratory review, what's the line? Yeah, I think the Supreme Court has been very clear about where to draw the line. And I think Will actually describes it quite nicely because it says that on the one hand, you have doctrines that simply seek to avoid litigation for its own sake. So for example, the judgment bar versus doctrines that abbreviate litigation because it's important to do so to protect some higher public value. So you have to look to the purpose of the doctrine. I would not play to every Bivens action because the separation of powers arguments that have been discussed today, rightly so, are present in every Bivens case. Right, but you have to look to the purpose of the doctrine. So for example, if there was a collateral estoppel argument, for example, or a statute of limitations argument, you would not say that those arguments have the same kind of, protect the same kinds of values as qualified immunity in Bivens. And that's what distinguishes them. The case would then proceed to trial, would it not? Right. If you don't have an electorate jurisdiction, appellate jurisdiction over denials to dismiss on that basis. And what Will recognizes is that there are doctrines that have the effect of cutting off litigation and litigation can have harmful consequences. But there's a difference between a doctrine that simply cuts off litigation, like the judgment bar, for the sake of cutting off litigation versus other doctrines that do so because of a important public value. And that is the distinction that this court should draw. And that, you know, it's outlined in Will, it's reliant on in Mitchell. All of the court's decisions rely on this difference between doctrines that protect a substantial public interest or a particular value of a high order, as opposed to those that simply, you know, cut off the litigation, such as, again, the FTCA's judgment bar. All right. Any other questions? All right, counsel, thank you very much for your helpful arguments in this matter. Garraway versus, I don't know how to say this name, Cuefo is submitted. All right, we're going to take a 10-minute break and we'll be back in just a few. All rise. This court shall stand in recess for 10 minutes.
judges: TALLMAN, FORREST, BUMATAY